368 So.2d 972 (1979)
LOUISIANA STATE BAR ASSOCIATION, Petitioner,
v.
Ford E. STINSON, Respondent.
Nos. 59855, 61716.
Supreme Court of Louisiana.
March 5, 1979.
Rehearings Denied April 9, 1979.
*972 Wellborn Jack, Sr., Shreveport, Ford E. Stinson, Jr, Benton, for respondent.
Leonard Fuhrer, Alexandria, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Louisiana State Bar Ass'n, Committee on Professional Responsibility, for petitioner.
TATE, Justice.[*]
This court has original jurisdiction of disciplinary proceedings against a member of the Louisiana bar. La.Const. of 1974, Art. 5, Section 5(B). The Louisiana State Bar Association, appearing through its Committee on Professional Responsibility, instituted the present disciplinary proceedings against Ford E. Stinson. Article XV of the Articles of Incorporation of the Association (1971), approved by us as a rule of this court. 21A West's LSA Revised Statutes 119 (1974).
In accordance with the procedures authorized by Article XV, a commissioner was appointed and heard evidence. In the commissioner's scholarly and fair detailed report, he concluded that the respondent's conduct provided an adequate basis for the court to impose a serious disciplinary penalty.
The commissioner's hearing resulted from charges set forth in two petitions for disciplinary action.
1. Charges of Misconduct, (Our) Docket No. 59,855
The first petition represents three instances of client dissatisfaction: 1. The respondent's unjustified delay and neglect in settling the Flannery succession; 2. The respondent's neglect and alleged failure to make proper preparation for trial in the representation of Loftin, and his commingling and use for a slight period of funds ($3,085) received in settlement of the Loftin claim; and 3. The respondent's delay in expeditiously handling matters representing a Mrs. McDowell, including the Smith succession, and the commingling of $1,167.60 of client's funds in the respondent's bank account.
By the respondent's conduct, his clients were forced to incur regrettable and unnecessary delay in receiving the final settlement of their claims. Further, at least in the Loftin case, he not only deposited the settlement check in his own account but additionally for at least three days used the client's funds.
*973 Nevertheless, taking account of several mitigating factors, including the respondent's ready willingness (in advance of any complaint to the committee) to reduce his fee and to pay interest or otherwise compensate for the delay occasioned by his negligence, the commissioner concluded that these charges by themselves would not justify the most serious disciplinary action (with the possible exception of the three-day misuse of the Loftin settlement funds).
2. Charges of Misconduct, (Our) Docket No. 61,716
The commissioner nevertheless concluded that serious disciplinary action is warranted, considering the totality of the evidence, most particularly because of the respondent's misconduct in connection with the charges proved in connection with the second petition.
As summarized by the commission's brief, with regard to this misconduct the evidence taken at the hearings indicate as a conclusion of law and fact that the respondent attorney, in representing Mr. and Mrs. J. M. Fuller and Terri L. Colley in a personal injury claim against three insurers, did "[r]eceive on their behalf on or about 22 February 1977 the sum of $26,000.00; respondent did commingle said sum with his own and did convert same to his personal and/or business use until on or about 29 July 1977, some five (5) months later, and did further misrepresent and withhold information as to the receipt of said sum of $26,000.00 in settlement."
In argument before this court, the disciplinary committee correctly points out that the drastic remedy of disbarment is the usual penalty for commingling of client funds of the extent here indicated, and its conversion (use or borrowing) by the lawyer, and that the mere fact of restitution by the attorney has not been regarded as sufficient reason to excuse imposition of this penalty.
The committee cites to us the following decisions to this effect: Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975); Louisiana State Bar Association v. Levy, 292 So.2d 492 (La.1974); Louisiana State Bar Association v. Brown, 291 So.2d 385 (La.1974); Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972); Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 (1972); Louisiana State Bar Association v. Blum, 256 La. 530, 237 So.2d 366 (1970); and Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (1967).
Conclusion
Nevertheless, we ultimately conclude that, while severe disciplinary action is warranted by the respondent's conduct, the drastic remedy of disbarment is not appropriate under the present facts and circumstances.
1. Here, unlike in the cited decisions, the complete payment to the client of all monies due occurred prior to any disciplinary complaint being made. Unlike in the cited instances, there is no indication that, but for the disciplinary proceedings, the lawyer might not ever have paid his client the sums due, and most of the decisions reflect theft from or an intent to defraud a client. In short, the present respondent's conduct is indicative more of procrastination and carelessness than dishonesty.
2. The six-month delay in turning over to the client the money collected for him is inexcusable. It appears, however, to have been motivated more by the lawyer's desire to complete collection of a claim against another insurance policy and to make a final adjustment of the entire representation, than by any desire to misuse the client's money.
Absolutely no excuse justifies the lawyer's response to his client on the five or six inquiries over the five months that the papers had not been completed, nor the lawyer's failure to turn over to his client the latter's money. On the other hand, the misconduct was primarily motivated by a desire to put off computing amounts due (until the medical payments coverage proceeds were received) rather than by greed or a dishonest intent to use the client's money.
*974 For instance, the lawyer volunteered to and did deduct over three thousand dollars from his $6,500 fee, which was itself a one-fourth rather than the usual one-third contingency fee. As the client admitted, the lawyer also offered to waive his fee entirely if the client was dissatisfied, but the client was unwilling to accept this offer since he realized that the lawyer had earned his fee. (This was all in advance of any complaint to the bar association.)
3. Likewise, little excuse can be offered for the lawyer's misconduct in failing to segregate his client's money in a separate account, and for permitting his personal balance to fall from time to time to an amount low enough to encroach on the sums in the account belonging to the client. The record shows the lawyer to be a highly individualistic sort of person, who felt that his maintaining collateral in the bank and cash in two special safety deposit boxes for the purpose of securing his clients was sufficient to protect the matter, despite his failure to segregate his client's money in a separate account as required by the disciplinary rules of the bar association. (The lawyer now maintains a special account into which he deposits his clients' monies.)
The record reflects that the respondent lawyer, now aged 64, has practiced law with an honorable reputation for some 42 years and has in the past (before his retirement from political life) served in the legislature with distinction for 24 years. During the period of the charges, it reflects the lawyer to have run a busy one-man law-practice, as well as having engaged in an active civic and public service and in farming activities.
The disciplinary committee points out, correctly, that a lesser disciplinary penalty is not justified simply because of the respondent's age, good reputation during his long practice of law and public service, and honorable position as a community leader perhaps the converse is true.
On the other hand, we do not feel that the most severe sanction of disbarment is required, under the totality of the evidence. This shows:
That the respondent attorney did good and honest work for his clients (if slowly); that no client lost money by his actions (nor is there the slightest hint of dishonest intent in the lawyer's procrastination); that indeed of his own volition (before any bar complaint) in each instance he attempted to minimize any client loss occasioned by his own delay by cutting his fees, which were in any event minimal rather than excessive; and that the lawyer had attempted to rectify his negligence or delay before any complaint was made to the disciplinary authorities.
As we stated in Louisiana State Bar Association v. Cox, 252 La. 978, 215 So.2d 513, 515 (1968): "The primary objective of such disciplinary action is to protect the courts and the public. No greater penalty should be imposed than that which is required to accomplish this purpose." Under all the circumstances here reflected, we think a suspension of three years will accomplish the disciplinary purpose.

Decree
Accordingly, it is ordered that Ford E. Stinson be suspended from the practice of law in the State of Louisiana for a period of three years, effective upon the date of finality of this decree. All costs of this proceeding shall be paid by the respondent.
ATTORNEY SUSPENDED FROM PRACTICE OF LAW FOR THREE YEARS.
SUMMERS, C. J., dissents. I am of the view that suspension from the practice for two years is adequate under the facts of this case.
NOTES
[*] Judge Pike Hall, Jr., of the Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.